## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| v. | **CRIMINAL ACTION FILE** |
| **DUAKO KUJO,** | **NO. 1:19-CR-00241-JPB-JEM-1** |
| Defendant. | |

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION
## <u>REGARDING DEFENDANT'S COMPETENCY</u>

For the below reasons, the Court **RECOMMENDS** that Defendant be found mentally competent to proceed with his criminal case and stand trial.

### I.     <u>BACKGROUND</u>

The 15-count indictment, which was returned by a federal grand jury sitting in the Northern District of Georgia on June 25, 2019, charges two defendants, Duako Kujo and Sammetrius Brooks, as follows: (1) counts one and three charge Kujo with Hobbs Act robbery; (2) counts two and four charge Kujo with using, carrying, and brandishing a firearm during the crimes of violence charged in counts one and three; (3) count five charges Kujo and Brooks with conspiracy to commit Hobbs Act robbery; (4) counts six, eight, ten, and twelve charge Kujo and Brooks with Hobbs Act robbery, aided and abetted by each other; (5) counts seven, nine, eleven, and thirteen charge Kujo and Brooks with using, carrying, and brandishing a firearm during the crimes of violence charged

in counts six, eight, ten, and twelve, aided and abetted by each other; (6) count fourteen charges Kujo and Brooks with armed bank robbery, aided and abetted by each other; and (7) count fifteen charges Kujo and Brooks with using, carrying, and brandishing a firearm during the crime of violence charged in count 14, aided and abetted by each other. (Doc. 2.)

As relevant here, on January 11, 2023, having reached an agreement with the government to plead guilty to counts one, three, five, thirteen, and fifteen, the District Judge, the Honorable J.P. Boulee, held a hearing for Kujo to enter his guilty plea. (Doc. 119 at 2-3, 8.) At the change of plea hearing, however, Kujo stated that he disagreed with the factual basis outlined by the government, he did not admit to the elements of the offenses, and he ultimately decided that he did not wish to plead guilty. (*Id.* at 17-23.) Judge Boulee, therefore, set a trial date of May 8, 2023. (*Id.* at 25; Doc. 111.) On March 24, 2023, counsel for Kujo, Jay Strongwater, filed a motion seeking to continue the trial date because, according to counsel, a determination about Kujo's competency to stand trial was needed. (Doc. 114.) Counsel asserted that Kujo "persists in his position that he does not recall what took place in conjunction with the charged counts," and that this alleged amnesia has impaired Kujo's ability to consult with defense counsel about the case. (*Id*.) Judge Boulee granted the motion for continuance on April 6, 2023, and he referred the matter to the undersigned for resolution. (Doc. 115.) On April 20, 2023, this Court ordered Kujo to submit to a psychiatric evaluation. (Doc. 117.) The evaluator found that Kujo was competent to stand trial, and the forensic evaluation report, dated September 6, 2023, was filed with the Court

under seal on September 19, 2023. (Doc. 123.) Also on September 19, 2023, after holding a hearing on Kujo's motion requesting new counsel, the Court granted the motion and appointed Dennis O'Brien to represent Kujo. (Docs. 122; 124; 125.) Granting Mr. O'Brien's request for a competency hearing, the Court held a hearing on December 4, 2023, at which the evaluator, Matthew Opesso, Psy.D., M.Ed., testified. (Docs. 126; 132 at 2-4.) At the end of the hearing, defense counsel indicated that Kujo may decide to stipulate to the results of the psychiatric evaluation, which would preclude the need for briefing. (Doc. 132 at 61-64.) The Court instructed counsel that, if Kujo decided to stipulate, counsel should file a notice of stipulation two weeks after counsel's receipt of the hearing transcript, and if he did not stipulate, Kujo's brief would be due 30 days after the two weeks, with the government's response due 30 days after that. (*Id.* at 61-63.)

On January 23, 2024, defense counsel sent an email to the Court and government counsel, which stated that Kujo conceded that there is insufficient evidence to meet the standard required under the law to establish incompetence, and accordingly, Kujo would no longer pursue a claim of incompetence.

## II. STATEMENT OF FACTS

At the competency hearing, Matthew Opesso, Psy.D., M.Ed., testified that he is a full-time forensic psychologist employed by the Federal Bureau of Prisons (BOP), and he is tasked with conducting court-ordered forensic mental health evaluations. (Doc. 132 at 5-6.)[1] Dr. Opesso testified that he met with Kujo on

---

[1] Transcript cites refer to the Court Reporter's page numbering, not the Court's ECF numbering.

3

three occasions. (*Id.* at 7-8.) Kujo reported to Dr. Opesso that he is from Ghana, and he immigrated to the United States about 15 years ago, when he was 18 or 19 years old. (*Id.* at 8-9.) Dr. Opesso testified that Kujo completed the 11th grade at a United States high school, and he is able to read and understand English, but his reading level appeared to be at an eighth grade level. (*Id.* at 9-10, 45, 52-53.) Kujo reported having multiple prior drug charges, and simple battery/family violence charges for both verbal and physical aggression with his father, and at one point, setting his girlfriend's car on fire because he believed she was cheating on him. (*Id.* at 10, 17-18.) Kujo reported, however, that he had never been to prison before this case and had only served probation, which according to Dr. Opesso, showed that Kujo is able to differentiate prison incarceration from being free in the community with supervision. (*Id.* at 10-11.) Dr. Opesso testified that at all times during the evaluation, Kujo was oriented to person, place, and time. (*Id.* at 10.)

Regarding medical history, Kujo reported to Dr. Opesso that when he was a child in Ghana, he was hospitalized due to mental health reasons, but he was unsure if he ever received a mental health diagnosis; he was treated at that time with oils, prayer, and homeopathic drinks. (*Id.* at 11, 38-39.) After coming to the United States, Kujo reported that he was hospitalized one time when he cut his own arm after having an argument with his father. (*Id.* at 11-12.) The police were called, he had to be tased because he was still holding the knife when they arrived, and he was hospitalized for three or four days due to suicidal thoughts and self-harm behavior. (*Id.* at 12, 39.) Kujo reported that he began using marijuana when he was a teenager, and he continued daily marijuana use up

4

until the time he was arrested for the present case. (*Id.* at 13, 37-38.) He also abused Xanax on a daily basis in 2015, and he admitted to using K2 and methamphetamine in the time period leading up to the present case. (*Id.* at 13-14, 37-38.) Kujo reported that, in the past, he had experienced daily auditory hallucinations, but he told Dr. Opesso that he was not experiencing any hallucinations during their interview, and Dr. Opesso did not observe him to be distracted by any hallucinations during their interview. (*Id.* at 16-17, 34-35.) According to Dr. Opesso, Kujo reported that when he is having a conversation with someone, the hallucinations just go away, and that, in any event, he is able to ignore the voices. (*Id.* at 16-17.) Dr. Opesso testified that while Kujo was at the Robert A. Deyton Correctional Facility, he complained of feeling sad and anxious, and he was prescribed a variety of anti-depressant, anti-anxiety, and anti-psychotic medications to treat his mood, anxiety, and sleep problems. (*Id.* at 12, 36.) Later, when he was transferred into BOP custody, he was prescribed Abilify, an anti-psychotic medication, and trazodone, an anti-depressant medication, to treat his complaints of sadness. (*Id.* at 12-13, 35-36.) Dr. Opesso testified that, although Abilify is in the class of drugs known as anti-psychotics, it is more commonly used to treat sleep problems, or to augment anti-depressant medications. (*Id.* at 35.) In Kujo's case, according to Dr. Opesso, Abilify was prescribed "to treat mood symptoms." (*Id.*)

Dr. Opesso testified that, overall, he did not find any clinical or adjustment concerns regarding Kujo's daily functioning at the prison. (*Id.* at 14-15, 34.) Having observed Kujo interacting with inmates, corrections officers, and others

in the prison, and also having spoken with the unit officer, Dr. Opesso testified that Kujo regularly came out of his cell throughout the day, went to the recreation yard, and socialized with peers. (*Id.* at 14, 34.) Also having observed Kujo's cell and locker, Dr. Opesso testified that everything was neatly organized, and sanitation was appropriate. (*Id.* at 14.) Kujo made several phone calls in a language other than English, and he was able to tell Dr. Opesso exactly who he called, and what they spoke about. (*Id.* at 14-15.)

According to Dr. Opesso, Kujo was cooperative with the evaluation process "to an extent," but during one of the tests that Dr. Opesso administered—the Personality Assessment Inventory, which asked a lot of questions about mental health history and current symptoms—Kujo "adamantly refused" to complete the test. (*Id.* at 15-16, 18-19, 41-42, 50-53.) He put on his headphones, slumped in his chair, and he would not take the test. (*Id.* at 16, 50-53.) Dr. Opesso testified that Kujo's score on the Miller Forensic Assessment of Symptoms (M-FAST) test, which is designed to determine the probability that someone is malingering, or at least exaggerating symptoms of mental illness, indicated "a high probability that he's exaggerating or feigning symptoms." (*Id.* at 19-21, 42-45.) Dr. Opesso also administered the TOMM test, which is a test for memory malingering, designed to differentiate if people are trying to feign memory impairment. (*Id.* at 21, 42-48.) Three trials of the TOMM test were administered to Kujo, and Dr. Opesso testified that Kujo's scores indicated "some intention to show that he has memory impairment." (*Id.* at 21-23, 42-48.) According to Dr. Opesso, Kujo appeared to be very concerned about Dr.

6

Opesso's judgment of Kujo, stating multiple times that he was "not a bad person," and that he wanted Dr. Opesso to indicate that in the report so the judge could see it. (*Id.* at 17.) Kujo also stated multiple times that he knows what it feels like to be robbed, and that he would never try to rob anybody. (*Id.* at 17.) Kujo further expressed concerns about his pending case, and the consequences of being convicted. (*Id.* at 18, 41.) Dr. Opesso testified that Kujo understood the nature and seriousness of the charges against him—namely, he could describe exactly what he was accused of doing, stating that he is charged with having "robbed a bank and many stores with a gun" in conjunction with his co-defendant; he could categorize it as a felony that could result in incarceration; and he talked about facing deportation if he was convicted, which is what he was most concerned about. (*Id.* at 18, 25-26, 31.) Dr. Opesso further testified that Kujo understood the functions of a judge, a jury, a prosecutor, and a defense attorney, as well as his right to remain silent, his right to an attorney, and his right to an attorney-client privilege. (*Id.* at 23-24, 31.) According to Dr. Opesso, Kujo also understood what it means to plead guilty, not guilty, and not guilty by reason of insanity, as well as the fact that plea bargaining involves pleading guilty in exchange for receiving less punishment. (*Id.* at 24-25.) Dr. Opesso testified that Kujo was able to describe the plea deal he had been offered, and he was able to appropriately respond to hypothetical questions Dr. Opesso posed about different types of plea deals he might be offered. (*Id.* at 25.) In response to Dr. Opesso's question about information Kujo would want to tell his attorney to aid in his defense, Kujo brought up his mitigating role, asserting that his co-

7

defendant was the planner or mastermind behind all of the alleged offenses, and also asserting that he had been coerced because his co-defendant "gave him a pill," that he did not recognize, and after taking the pill, he was under the influence and "didn't know what he was doing." (*Id.* at 26-29, 48-49, 54-59.)

Based on the testing, behavioral observation, and interviews, Dr. Opesso classified Kujo as "malingering," and he also diagnosed Kujo with having substance abuse disorders, based on his marijuana and Xanax abuse, but he found no other mental health diagnoses. (*Id.* at 29-30, 42, 49, 53, 55-56.) Dr. Opesso concluded, therefore, that Kujo was competent to stand trial. (*Id.* at 30, 49-50, 57-58.)

### III.   DISCUSSION

"The Due Process Clause of the Fifth Amendment prohibits the government from trying a defendant who is incompetent." *United States v. Rahim*, 431 F.3d 753, 759 (11th Cir. 2005) (per curiam) (citations omitted). In order for a defendant to be found competent to stand trial, he must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and he also must have "a rational as well as factual understanding of the proceedings against him." *Rahim*, 431 F.3d at 759 (citations omitted); *see also Dusky v. United States*, 362 U.S. 402, 402 (1960) (explaining that it is not enough to find that a defendant is oriented to time and place and has some recollection of events; the test "must be" that defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the

proceedings against him"). A defendant's competency "is an ongoing inquiry; the defendant must be competent at all stages of trial." *Rahim*, 431 F.3d at 759 (citations omitted). And the district court must conduct a competency hearing if there is a "bona fide doubt" about the defendant's competence. *Id.* Further, although it is not settled, the Court will assume for purposes of resolving the issue of competency to stand trial here, that it is the government's burden to prove that Kujo is competent by a preponderance of the evidence. *See United States v. Izquierdo*, 448 F.3d 1269, 1276-78 (11th Cir. 2006) (per curiam) (discussing that Supreme Court dicta and the competency statute language both indicate that it is the defendant's burden to prove incompetence, but that this Circuit's binding precedent holds that, at a competency hearing, it is the government's burden to prove competence) (citing *United States v. Makris*, 535 F.2d 899, 906 (5th Cir.1976)[2] (adopting the preponderance standard for federal competency hearings, and stating that "[t]here can be no question that in federal criminal cases the government has the burden of proving defendant competent to stand trial at the [competency] hearing")).

"[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a *present* inability to assist counsel or understand the charges." *Battle v. United States*, 419 F.3d 1292, 1299 (11th Cir. 2005) (emphasis in original) (citation omitted). Similarly, "[t]he fact that a

---

[2] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit that were issued before October 1, 1981.

9

defendant has been treated with anti-psychotic drugs does not *per se* render him incompetent to stand trial," and "neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) (emphasis in original) (citations omitted); *see also Battle*, 419 F.3d at 1299. Often, the best evidence of a defendant's mental state and competence at the time of trial is the evidence of his behavior during the relevant time period, "especially the evidence of how he related to and communicated with others then." *Wright v. Sec'y for Dept of Corr.*, 278 F.3d 1245, 1259 (11th Cir. 2002).

Here, the unrebutted evidence shows that Kujo has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and also "a rational as well as factual understanding of the proceedings against him." *Rahim*, 431 F.3d at 759. An understanding of complex issues or legal theories is not required. *See United States v. Hogan*, 986 F.2d 1364, 1373 (11th Cir. 1993) (finding that minor defects in the defendant's cognitive abilities did not render him incompetent, explaining that "[e]ven perfectly competent defendants often do not fully comprehend the intricacies of some of the defensive theories offered by their lawyers. That level of comprehension is not a requirement of competency"). As discussed above, once Kujo was incarcerated in this case, he was given anti-depressant and anti-psychotic medications to treat his mood, anxiety, and sleep problems, but all of the testing, behavioral observation, and interviews that Dr. Opesso conducted in evaluating Kujo led him to conclude that Kujo was "malingering" and he was competent to

10

stand trial. (Doc. 132 at 12-13, 29-30, 35-36, 42, 49, 53, 55-56.) Dr. Opesso found no other mental health diagnoses, though he also diagnosed substance abuse disorders based on Kujo's past abuse of marijuana and Xanax. (*Id.*) As Dr. Opesso testified, and Kujo did not rebut, Kujo understood the nature and seriousness of the charges against him—namely, he could describe exactly what he was accused of doing, stating that he is charged with having "robbed a bank and many stores with a gun" in conjunction with his co-defendant; he could categorize it as a felony that could result in incarceration; and he talked about facing deportation if he was convicted, which is what he was most concerned about. (*Id.* at 18, 25-26, 31.) Kujo also understood the functions of a judge, a jury, a prosecutor, and a defense attorney; he understood his right to remain silent, his right to an attorney, and his right to an attorney-client privilege; he understood what it means to plead guilty, not guilty, and not guilty by reason of insanity, as well as the fact that plea bargaining involves pleading guilty in exchange for receiving less punishment; and in response to Dr. Opesso's question about information Kujo would want to tell his attorney to aid in his defense, Kujo showed his understanding of a mitigating role, asserting that his co-defendant was the planner or mastermind behind all of the alleged offenses, and also asserting that he had been coerced by his co-defendant giving him a pill that rendered him "under the influence." (*Id.* at 23-29, 48-49, 54-59.)

There is no evidence that Kujo is suffering from any mental health issues, or medication side effects, that would interfere with his ability to consult with and assist his counsel, or that impact his understanding of the proceedings

11

against him. Though drug treatment is a relevant factor for the Court to consider, it does not in and of itself render a defendant incompetent. A defendant "must present evidence demonstrating that the dosage given him affected him sufficiently adversely as to raise a doubt of his ability to consult with his lawyer and to have a rational understanding of the proceedings against him." *Sheley v. Singletary*, 955 F.2d 1434, 1439 (11th Cir. 1992) (citation omitted). "A bare allegation of the level of psychotropic drugs administered to [defendant] . . . is insufficient to meet this evidentiary threshold." *Id.*

Here, Kujo presented no evidence of any adverse effects from the medications he began taking for mood after he was incarcerated, nor did he present any evidence indicating that the medications help him, or continue to be needed. Thus, there is no evidence, one way or another, that the medications affect either his ability to consult with and assist his counsel, or his ability to understand the proceedings against him. Also, as discussed above, Kujo did not rebut the evidence provided by Dr. Opesso, who found that Kujo was "malingering," and competent to stand trial, and indeed, after the competency hearing, Kujo's counsel conceded that there is insufficient evidence to meet the legal standard required to establish incompetence. Accordingly, the Court finds that the evidence establishes by a preponderance that Kujo is competent to stand trial.

## IV.    CONCLUSION

Based on the above reasons and cited authority, the Court **RECOMMENDS** that Defendant be found mentally competent to proceed with

his criminal case and stand trial, as he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and he also has "a rational as well as factual understanding of the proceedings against him." *Rahim*, 431 F.3d at 759 (citations omitted).

Defendant has no further motions pending before me. Accordingly, this case is **CERTIFIED READY FOR TRIAL**.

**SO RECOMMENDED** January 29, 2024.

*J. Elizabeth McBath* (signature)
J. ELIZABETH McBATH
UNITED STATES MAGISTRATE JUDGE